IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TERRE LYNE FUNDERBURK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:10cv852-CSC |
| | ) | (WO) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. Introduction**

On October 31, 2006, the plaintiff, Terre Lyne Funderburk ("Funderburk"), applied

for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§

401 *et seq*. and for supplemental security income benefits under Title XVI of the Social

Security Act, 42 U.S.C. § 1381 *et seq*., alleging that she was unable to work because of a

disability. Her application was denied at the initial administrative level. The plaintiff then

requested and received a hearing before Hon. J. Samuel Childs, an Administrative Law Judge

("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council

rejected a subsequent request for review on August 24, 2010. The ALJ's decision

consequently became the final decision of the Commissioner of Social Security

("Commissioner"). See *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[1] The case

---

[1]Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No.
103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social
Security matters were transferred to the Commissioner of Social Security.

is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3).  Pursuant

to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United

States Magistrate Judge.  Based on the court's review of the record in this case and the briefs

of the parties, the court concludes that the decision of the Commissioner should be reversed

and remanded for further proceedings.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A) a person is entitled to disability benefits when the

person is unable to

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous period
> of not less than 12 months . . .

To make this determination[2] the Commissioner employs a five-step, sequential

evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1)  Is the claimant presently unemployed?
> (2)  Is the claimant's impairment severe?
> (3)  Does the claimant's impairment meet or equal one of the specific
> impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)  Is the claimant unable to perform his or  former occupation?
> (5)  Is the claimant unable to perform any other work within the economy?

> An affirmative answer to any of the above questions leads either to the next
> question, or, on steps three and five, to a finding of disability.  A negative
> answer to any question, other than step three, leads to a determination of "not
> disabled.

---

[2]A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological
abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

2

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); 42 U.S.C. § 405(g).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A reviewing court may not look only to those parts of the record which supports the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  The Issues

**A.  Introduction.**  Funderburk was born on March 24, 1970.  She completed school through the tenth grade and has a GED.  (R. 32).   Her past work experience included employment as a waitress, grocery store cashier, composite worker at an aerospace plant,

---

[3]  *McDaniel v. Bowen,* 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits.  *See Sullivan v. Zebley*, 493 U.S. 521, 525 n.3 (1990). Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Sullivan*, 493 U.S. at 525 n.3; *Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

machine operator at a cotton mill, and manager at a dry cleaners.  (R. 159).

Funderburk contends that she is unable to work due to intense headaches, depression, cognitive impairments, skin hives (urticaria), and foot, leg, and back pain.  (R. 31-39). Following the hearing, the ALJ concluded that Funderburk had the following severe impairments: "traumatic arthritis to both lower extremities; degenerative disc disease of the lumbar spine; and depression. The claimant also has the non-severe impairments of rhinitis and urticaria."  (R. 13). The ALJ further concluded that Funderburk's impairments or combination of impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (R. 20-21).   The ALJ determined that Funderburk had the residual functional capacity

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). She can sit/stand every 30 minutes with a sit/stand option. The claimant should not use her right lower extremity for pushing and/or pulling of foot controls. The claimant can frequently climb ramps/stairs, but should not climb ladders/ropes/scaffolds. She can frequently bend, balance, stoop, kneel, crouch, and/or crawl. She cannot work in and/or around exposure to hazardous condition such as unprotected heights, dangerous machinery, and/or walking on uneven surfaces. The claimant should be limited to unskilled work activity defined as simple routine tasks involving no more than simple, short instructions and simple work related decisions with few work place changes.

(R. 21).

The ALJ concluded that Funderburk was unable to return to her past relevant work, (R. 25), but the ALJ concluded that Funderburk had the residual functional capacity to perform other jobs that exist in significant numbers in the national economy, and thus, she was not disabled.  (R. 25).

4

**B. Funderburk's Claims.**  As stated by Funderburk, the primary issues are as follows:

1. The Commissioner's decision should be reversed, because the ALJ erred as a matter of law in failing to properly apply the "slight abnormality standard" in finding Ms. Funderburk's migraine headaches to be non-severe.

2. The Commissioner's decision should be reversed because the ALJ failed to properly evaluate the effects and resulting limitations caused by the combination of Ms. Funderburk's many severe impairments as required by Eleventh Circuit law.

3. The Commissioner's decision should be reversed, because the ALJ committed reversible error in failing to give any weight to the medical opinions expressed by Dr.'s Holt, Miller, and Dubay, Ms. Funderburk's treating sources.

(Pl's Br. at 7) (emphasis omitted).

## IV.  Discussion

**A.  Whether ALJ erred by failing to find that Funderburk's migraine headaches were a severe impairment**

Funderburk contends that the ALJ erred by failing to find that her headaches constituted a severe impairment.  "[A] 'severe impairment' [is] defined as 'any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities.'"  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (quoting 20 C.F.R. § 404.1520(c)).  Basic work activities are "the abilities and aptitudes necessary to do most jobs."  20 CFR § 404.1521.  An impairment can be considered as "not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be

5

expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986); *see also Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). To satisfy the "mild" burden to demonstrate a severe impairment at step two, the claimant "need show only that [his] impairment is not so slight and its effect is not so minimal." *McDaniel,* 800 F.2d at 1031. The step two severity analysis is a threshold inquiry that allows only "claims based on the most trivial impairment to be rejected." *McDaniel*, 800 F.2d at 1031.

The record includes medical evidence, including objective medical diagnostic evidence, confirming that Funderburk suffers from headaches that would be expected to interfere with Funderburk's ability to work.

On September 7, 2000, Funderburk had a diagnosis of "headaches." (R. 214). An MRI of the brain on that date was normal. (R. 214).

On March 9, 2001, Funderburk complained of headaches and her treating physician, Dr. Paul Caudill Miller, ordered CT scans of the brain and sinuses. (R. 205). The CT scans of the brain and sinuses were normal. (R. 205-06).

In February 2005, following a motor vehicle accident, Funderburk was given a CT scan of the head, which indicated a subarachnoid hemorrhage and soft tissue swelling overlying the right frontotemporal region. (R. 248). Funderburk was referred to Dr. Caudill Miller for evaluation of a cerebral contusion sustained in the motor vehicle accident. (R. 211). At that time, Funderburk had a generalized headache and neck pain and reported a past

6

medical history of migraine and tension headaches. (R. 211). She also had a generalized headache, for which she took Lorcet and Darvocet. (R. 211). Dr. Miller noted that Funderburk had "massive contusions to her face and spine," and that she did not remember the accident. (R. 211-212). Dr. Miller diagnosed Funderburk with closed head trauma. (R. 212). Dr. Miller reviewed CT scans of Funderburk's brain and concluded:

> There is prominent subarachnoid blood in the left temporal parietal area and some in the left frontal area. It almost looks like there may be some hypodensity like a contusion, but on the 02- 21-05 film there is a definite contusion in the medial temporal area in the lateral basal ganglion, and blood in the frontal and temporal lobe. She certainly has a significant contusion in the frontotemporal region on the left. There is no subdural hematoma, but this is fairly impressive.

(R. 210).

Funderburk returned to Dr. Miller on March 10, 2005. Her headaches were daily, mostly on the right side of her head, the headaches lasted all day, and she was taking Darvocet for pain. (R. 209). Dr. George assessed Funderburk with a left frontotemporoparietal contusion/basal ganglion contusion, and noted that she had "a very impressive contusion on her CT, and she is very lucky to have survived this accident." (R. 209).

Funderburk again returned to Dr. Miller on April 21, 2005. She reported that she was still having headaches, was taking eight Darvocet per day, and was feeling better. (R. 208). Dr. Miller determined that Funderburk's left frontotemporal contusion/basal ganglion contusion was improving. (R. 208). He noted further that Funderburk "definitely has had

a reason to require pain medicines," but he counseled Funderburk on the dangers of addiction to painkillers.  (R. 208).  He noted that Funderburk should start tapering off of the Darvocet, even though she definitely had a reason to require them.  (R. 208).

On February 20, 2008 Funderburk presented to HSI Adult Medicine with severe headaches.  (R. 304).  Funderburk was diagnosed with headaches and chronic pain.  (R. 305).

On December 8, 2008, the Disability Determination Service referred Funderburk to Dr. Al Vester for a musculoskeletal examination for Funderburk's complaint of "pain in the feet."  (R. 270).  Dr. Vester noted that Funderburk fractured her right ankle and left foot in a motorcycle accident.  (R. 270).   Dr. Vester also noted that Funderburk "complains of headaches" and had a scar on the "right brow area" from the motorcycle accident, but Dr. Vester did not note Funderburk's past medical history related to head trauma from the accident, or past medical history of headaches.  (R. 270-71).  Following the musculoskeletal examination, Dr. Vester diagnosed Funderburk with "traumatic arthritis to the distal lower extremities;" "degenerative disease of the lumbar spine;" "depressive disorder;" "allergic rhinitis;" and "chronic uticaria [hives]."  (R. 272).

On February 25, 2009, the Department of Disability Services referred Funderburk to Aleada Lee-Tarver, Ph.D., a licensed psychologist, for evaluation.  In addition to noting Dr. Vester's examination and findings, Dr. Tarver noted that Funderburk had been treated by Dr. Miller following closed head trauma sustained in a motor vehicle accident.  (R. 285).

At the hearing, Funderburk testified that she had severe headaches approximately

three times per week as a result of her traumatic brain injury. (R. 32-33). She described the headaches as "very intense migraine headaches. It's like a deep knife with flames shooting in, you know, toward, to my brain, I guess is the way I would say it." (R. 33). She testified that the headaches normally occurred three times per week, and that the headaches usually began by waking her from sleep. (R. 33). She treated the headaches with a cold shower and taking multiple Goody Powders and "about six Tylenol." (R. 33).[4] She testified: "[T]he best way I found that eases [the headaches], is I either get in my closet where it's completely dark, put a blanket over me, or I do get up under my bed." (R. 33). The headaches varied in length and lasted 36 hours at the most. (R. 34). She also testified that she did not have insurance and that lack of insurance affected her ability to receive adequate care for her headaches. (R. 34). She also stated that "a neurologist[5] ... said that he really didn't think [the headaches] had anything to do with the accident, but he couldn't be sure 100 percent definite." (R. 34).

The ALJ's "discussion" of Funderburk's impairments consists of the usual verbatim regurgitation of large portions of medical records and physicians' notes. (R. 13-20). Remarkably, however, buried in the regurgitated medical record is medical documentation of Funderburk's headaches and head trauma. What is not found in the ALJ's findings as to Funderburk's impairments is any analysis whatsoever. The ALJ must state, with sufficient specificity, the reasons for his decision referencing the plaintiff's impairments. *See Cowart*

---

[4]Funderburk also testified that she had back pain for which she took "average probably seven, eight Goody Powders a day and 20 Tylenol or better." (R. 37). She stated that she had no other treatment for her back pain because "I have no insurance and the doctors won't treat me." (R. 37).

[5]The record contains no indication of the identity of the neurologist.

*v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) ("What is required is that the ALJ state specifically the weight accorded to each item of evidence and why he reached that decision. In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."). The ALJ's verbatim regurgitation of the medical record does not satisfy the ALJ's obligation to state the reasons for his decision in understandable language, as required by law:

> *Any* such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual *shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based*.

42 U.S.C. § 405(b)(1) (emphasis added).

In particular, the ALJ's analysis at step two is devoid of <u>any</u> reference to Funderburk's subjective statements at the administrative hearing regarding the limiting effects of her headaches. It is clear that, if credible, those subjective statements are indicative of Funderburk's "abilities and aptitudes necessary to do most jobs," 20 CFR § 404.1521, such as the ability to be exposed to light and not spend significant amounts of time in a closet, under a blanket, or under a bed. The ALJ did not state any explicit reason for discrediting Funderburk's subjective testimony about her headaches. "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the

10

testimony be accepted as true." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citations omitted).    Accordingly, the ALJ erred as a matter of law.

In sum, the ALJ erred as a matter of law at step two of the analysis by failing to make any finding with regard to the credibility of Funderburk's subjective testimony. *Wilson*, *supra*; *Cowart*, *supra*.  Further, the record contains substantial evidence that Funderburk's headaches "'significantly limit[] [her] physical or mental ability to do basic work activities.'" *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (quoting 20 C.F.R. § 404.1520(c)).  The record does <u>not</u> contain substantial evidence to support a finding that Funderburk's headaches, alone or in combination with other impairments, are such slight abnormalities "that [they] would clearly not be expected to interfere with [Funderburk's] ability to work, irrespective of age, education or work experience." *McDaniel*, 800 F.2d at 1031.  Accordingly, the ALJ's failure to identify Funderburk's headaches as a severe impairment is not supported by substantial evidence.

**B.**    **Whether the ALJ committed reversible error by failing to properly evaluate the effects and resulting limitations caused by the combination of Ms. Funderburk's many severe impairments as required by Eleventh Circuit law**

"The finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at step two." *Jamison v. Bowen*, 814 F. 2d 585, 588 (11th Cir. 1987); *see also Heatly v. Comm'r of Social Sec.*, 382 Fed. Appx. 823 (11th Cir. 2010) (panel decision).  Here, consistent with the regulations and

applicable law, the ALJ credited Funderburk with severe impairments at step two and proceeded forward with the sequential evaluation.  Thus, if Funderburk's headaches should have been included as a severe impairment at step two, the omission constitutes reversible error only if the ALJ failed in subsequent steps of his analysis to fully account for functional limitations arising from that impairment.  *See Heatly*, 382 Fed.Appx. 823; *see also Burgin v. Comm'r of Social Sec.*, 420 Fed. Appx. 901, 903 (11th Cir. 2011) (panel decision) ("Even assuming the ALJ erred when he concluded [the claimant's] edema, sleep apnea, and obesity were not severe impairments, that error was harmless because the ALJ considered all of his impairments in combination at later steps in the evaluation process."); *Delia v. Comm'r of Social Sec.*, 433 Fed. Appx. 885, 887 (11th Cir. 2011) (panel decision) ("Because the ALJ gave full consideration to the consequences of [the claimant's] mental impairments on his ability to work at later stages of the analysis, the error [in failing to identify the claimant's mental impairments as a severe disability] at step two was harmless and is not cause for reversal.").

Here, the ALJ failed to fully account for the functional limitations of Funderburk's headaches in step five of the analysis by (1) failing to articulate explicit or adequate reasons for ignoring Funderburk's subjective complaints of painful headaches; (2) failing to account for Funderburk's headaches in determining Funderburk's residual functional capacity; (3) failing to pose a hypothetical to the vocational expert (VE) that accounted for the functional limitations of Funderburk's headaches; and (4) compounding his error by discrediting

Funderburk's other subjective complaints of pain without articulating explicit and adequate reasons for doing so.

To establish a disability based on complaints of pain and other subjective conditions, "the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991). As discussed in Part IV A of this opinion, the record contains evidence, including objective medical evidence, that Funderburk has severe headaches.  (R., 205-12, 214, 248, 271, 304-05, 285). Further, at the administrative hearing, Funderburk testified that her headaches occurred three times per week, lasted up to thirty-six hours, and were "very intense migraine headaches ... like a deep knife with like flaimes shooting in, you know, toward my brain." (R. 33-34).  She testified that her headaches interfered with her sleep and were disabling to the point that she had to retreat to "completely dark" place such as a closet, under a blanket, or under the bed.  (R. 32-34).

However, it is clear that the ALJ did not account for Funderburk's migraines in determining Funderburk's residual functional capacity, and he did not pose a hypothetical to the VE that accounted for Funderburk's headache-related impairment. (R. 53-57). Because the ALJ did not state any explicit reason why he did not account for Funderburk's

subjective testimony about the severity and limiting effects of her headache pain, it is not clear from the ALJ's opinion whether he simply forgot to consider that evidence in determining her residual functional capacity and in questioning the VE, or whether he intentionally discredited the evidence while neglecting to explain his reasons for doing do. Either way, the ALJ committed reversible error.   *See* 20 C.F.R. 416.945(a)(2) ("We will consider all of your medically determinable impairments of which we are aware ... when we assess your residual functional capacity."); *Wilson*, 284 F.3d at 1227 ("In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."); *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991) ("If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.  Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true."); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (holding that an ALJ is required to "state specifically the weight accorded to each item of evidence and why he reached that decision").

The ALJ further compounded his error by relying heavily on the finding that, as of the alleged onset date of her disability (February 1, 2008), Funderburk had not sought medical attention for her back pain, and she treated her back pain, foot and leg pain, and hives with over-the-counter medication.  The record does not support the ALJ's factual findings that Funderburk did not seek medical treatment for her pain or take prescription medications after

the February 2008 disability onset date.  Funderburk was diagnosed with chronic pain on March 5, 2008 and prescribed Lortab.  (R.  300).  She received emergency room treatment, including steroid injections, for her hives in August 2008.  (R. 41, 298).  In May 2009, Funderburk sought medical treatment and was assessed with chronic back pain and chronic foot pain.   (R.  293).  Further, as the ALJ recognized in his opinion, Funderburk unsuccessfully attempted to work at the Macon County Greyhound Park after the alleged onset date of February 1, 2008 and was being treated with injections in her feet at that time.[6]  (R. 12, 42-43 ).

Further, although the ALJ stated that Funderburk "takes only over the counter medication" for her foot and leg pain and that Funderburk "testified [the over the counter medication] helps relieve her pain symptoms" from degenerative arthritis of the lower extremities (R. 23), the transcript does not substantiate the ALJ's characterization of Funderburk's testimony on this point.  (R. 34-35, 39-40, 42-43).  Moreover, Funderburk testified that, in using over the counter medications to treat her pain, she took "average probably seven, eight Goody[s] Powders a day and twenty Tylenol or better" to treat her back pain and an average of "about thirty Benadryl a day" to treat her hives.  (R. 33, 36). These excessive dosages clearly are not consistent with conditions that can be controlled with over-

---

[6]As the ALJ also recognized, the injections Funderburk was receiving to treat her feet also required her to wear boots. (R. 12, 42-43 ).  Funderburk was fired from her job at the Macon County Greyhound park because she had to wear the boots as a result of the injections.  (R. 12, 44). The ALJ considered this an unsuccessful work attempt.  (R. 12).  The court is at a loss, therefore, as to how the ALJ subsequently concluded that the claimant's unsuccessful attempt to work at the Greyhound Park "shows someone who is still capable of work" because, the ALJ found, Funderburk "did not leave because of disability, but because her employer ceased her employment."  (R. 24).

the-counter medication; in fact, Funderburk was taking over-the-counter medications dangerously in excess of *prescription* dosages.[7]  Under the circumstances, the mere fact that Funderburk obtained the medications without a prescription does not support the ALJ's conclusion that Funderburk's conditions are not as severe as she alleges.

As the ALJ noted, Funderburk did not seek medical treatment and prescription pain medications because she had no insurance and could not afford it.  (R. 22-23, 34, 36-37). Funderburk testified that, in the past, she had received narcotic and prescription pain medication for her back, but could no longer do so because she "has no insurance and the doctors won't treat [her]."  (R. 37).  The ALJ's substantial reliance on Funderburk's failure to obtain more medical care is directly contrary to the law of this circuit.  "To a poor person, a medicine that he cannot afford to buy does not exist." *Dawkins v. Bowen,* 848 F.2d 1211,1213 (11th Cir. 1988) (*quoting Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987). Therefore, in this circuit, "when a 'claimant cannot afford the prescribed treatment and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in

---

[7]For example, one regular strength Tylenol contains 325 mg of acetaminophen, as does one regular strength packet of Goodys Powder.  www.tylenol.com; http://www.goodyspowder.com. Thus, seven regular strength Goodys Powders and twenty regular strength Tylenol amounts to 8775 mg of acetaminophen.  For prescription medication, the FDA has recommended no more than a maximum of 4000 mg of acetaminophen per day, due to the risk of liver damage.  In other words, Funderburk takes more than double the maximum recommended prescription dosage of acetaminophen every day.  http://www.fda.gov/ Drugs/DrugSafety/InformationbyDrugClass/ucm239871.htm.

The FDA has cautioned that **"[t]he risk of liver injury primarily occurs when patients take multiple products containing acetaminophen at one time and exceed the current maximum dose of 4000 mg within a 24-hour period. ... Healthcare professionals should also advise patients to seek medical help immediately if they have taken more acetaminophen than directed or experience swelling of the face, mouth, and throat, difficulty breathing, itching, and rash after taking acetaminophen."** *Id.*

law.'" *Id.* (quoting *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir.1986).

The court notes that, as the basis for improperly overlooking Funderburk's inability to afford medical care, the ALJ stated that "there are community and church services available to indigent people who are in need of medical care." (R. 23) However, the ALJ did not develop the record as to whether such resources existed and were available to Funderburk. *See* Social Security Ruling (SSR) 82-59 ("[A]ppropriate development must be made to resolve whether the claimant or beneficiary is justifiably failing to undergo the treatment prescribed. ... Although a free or subsidized source of treatment is often available, the claim may be allowed where such treatment is not reasonably available in the local community. All possible resources (e.g., clinics, charitable and public assistance agencies, etc.), must be explored. Contacts with such resources and the claimant's financial circumstances must be documented."); *see also Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981) ("[B]ecause a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record."). Because the record simply was not developed with regard to the availability of free or low-cost medical treatment, the ALJ's conjecture that "there are community and church services available" is not supported by the record.

For these reasons, the court finds that the ALJ committed reversible error at step five of the sequential analysis by (2) failing to account for Funderburk's headaches in determining Funderburk's residual functional capacity; (3) failing to pose a hypothetical to the vocational

17

expert (VE) that accounted for the functional limitations of Funderburk's headaches; and (4) compounding his error by discrediting Funderburk's other subjective complaints of pain without articulating explicit and adequate reasons for doing so.  The case is therefore due to be remanded.[8]  Because the court determines that the case is due to be remanded, the court pretermits consideration of Funderburk's remaining arguments.

## V. Conclusion

Accordingly,  this case  will be reversed and remanded to the Commissioner for further proceedings consistent with this opinion.  It is further

**ORDERED** that, in accordance with *Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1278 fn. 2 (11th Cir. 2006), the plaintiff shall have **sixty (60)** days after he receives notice of any amount of past due benefits awarded to seek attorney's fees under 42 U.S.C. § 406(b). *See also Blitch v. Astrue*, 261 Fed. Appx. 241, 242 fn.1 (11th Cir. 2008).

A separate order will issue.

Done this 15th day of March, 2012.

/s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

---

[8]The court does not render judgment for Funderburk at this time because the record has not been developed as to the effect of Funderburk's headaches on her residual functional capacity, and because the record is incomplete as to whether her headaches, in combination with her other impairments, would prevent her from performing work that exists in significant numbers in the national economy.